## CARRINGTON v. SILVER & CO.

(Circuit Court, S. D. New York. December 6, 1894.)

1. PATENTS—INFRINGEMENT—CHANGE OF FUNCTION BY NATURAL BREAKAGE.

It is no ground of a decree for infringement that the glass chimneys in defendant's gas stove become broken, and that such stove, if used without the chimney, would infringe complainant's patent, where the evidence is uncontradicted that defendant never sold a stove without a chimney, and has replaced a great many broken chimneys, and there is no evidence that the stove was ever used without a chimney.

2. SAME—GAS STOVES—INFRINGEMENT.

Carrington's patents, Nos. 419,827, 420,255, for improvements in gas stoves, the fundamental principle of which is the free radiation of heat at all points, and particularly at the lower portion of the stove, and the avoidance of upward drafts and chimney-like effect above the burner, *held* not to be infringed by a stove markedly similar in appearance, but in fact designed, by the use of a glass chimney, to create an upward draft.

Final hearing in equity. This was a suit by Anna A. Carrington against Silver & Co., a corporation, for infringement of letters patent.

The complainant is the owner of two letters patent, granted to James H. Carrington, for improvements in gas stoves. The first of these, No. 419,- 827, was granted January 21, 1890. The application was filed November 1, 1889. The patentee says: "My invention consists of a stove the body of which is composed of perforated metal, designed for burning to the best advantage illuminating or nonilluminating gas. By my invention I obviate all centralization of drafts or currents of air or heat, and the heat is given free outward radiation at all points, so that there are no jets of air drawn in at the base and no chimney-like effect above the burner, which results from confining the heated air, as with common stoves of this class. The top of the stove is by preference closed or imperforate to deflect the heat outward." He says further that the body of the stove is of perforated metal—preferably sheet iron—and may be from one foot to three or more feet in height. The perforations are by preference small and close together. From one hundred to three hundred perforations to the square inch produce the best results. The top of the stove is without apertures and serves to intercept the rising currents of heated air and causes them to be deflected downward and outward. The burner may be of any approved type and is located at the base of the stove. The bottom of the stove consists of a perforated plate. There is practically no draft into the stove except through this bottom plate. For high stoves a centrally located per-

forated plate is used to deflect the heat and throw it out more at the base of the stove and intercept upward drafts. This construction allows a full supply of air and produces thorough combustion and a full lateral radiation of heat at all parts of the body of the stove.

The claims are as follows: "(1) As a new article of manufacture, a gas stove consisting of a base, a hollow body portion mounted on the base and having small interstices or perforations extending substantially to its lower end, and a burner within the body portion and near the lower end thereof, substantially as set forth. (2) As a new article of manufacture, a gas stove consisting of a base, a burner, a hollow body portion inclosing the burner mounted on the base, and having small interstices or perforations extending below the normal level of the flame of the burner, substantially as set forth. (3) As a new article of manufacture, a gas stove consisting of a base, a hollow body mounted on the base and having small perforations or interstices extending substantially to its upper and lower ends, a burner within the body portion near the lower end thereof, and a cap closing the upper end of the body, substantially as set forth. (4) As a new article of manufacture, a gas stove consisting of a hollow body closely perforated or intersticed throughout its length, a supporting base, a perforated or intersticed bottom for the body, a burner within the body adjacent to the upper side of said bottom, and a cap closing the upper end of the body, substantially as set forth. (5) As a new article of manufacture, a gas stove consisting of a base, a hollow body portion mounted on the base and having small perforations or interstices extending substantially to its lower end, a burner within the body portion near the lower end thereof, and a transverse deflector within the body above the burner, substantially as set forth."

The second patent, No. 420,225, was granted January 28, 1890. The application was filed November 16, 1889. The patentee says: "My invention relates to certain improvements in gas heating stoves; and it has for its object to provide an illuminated gas stove, or stove in which the reflection from the flame is made to light up and give a pleasing effect to an illuminated transparent shell placed within the foraminated or woven-wire casing forming the body of the stove. It has been common to employ a bright metal reflector in gas stoves; but these become tarnished, and besides do not produce an effect visible from all sides of the stove. My invention consists of a shell made in the shape of a cone or dome and formed of transparent material, preferably of different colors, so as to form a pleasing and mellow glow from the reflected light received from below, and which is visible through the foraminated casing from all sides of the stove, as hereinafter fully described." He says further that within the cylindrical casing is an adjustably supported transparent shell open at its top and bottom. This shell is preferably shaped like a dome or a truncated cone and is made of mica, porcelain or colored glass. The light from the burner strikes the inner wall of this shell and the illumination thus produced is clearly visible through the perforations of the cylinder. This produces a pleasing effect upon the eye. The shell, like the deflecting plate of the previous patent, also serves to check the upward passage of heated air and forces it out through the perforations below the shell and near the floor. The remaining portions of hot air pass through the opening at the top of the shell and are deflected through the upper perforations. "In this way the stove is made to heat uniformly from bottom to top, an excessive heat at the top is avoided, and the heat is kept down in the lower portion of the room, where it does the most good."

The claims are as follows: "(1) In a gas stove, the combination, with the foraminated or woven-wire casing and a subjacent burner, of an illuminated shell placed above the burner within the circumference of the casing, substantially as shown and described. (2) A gas stove having above its burner an illuminated shell surrounded by an outer casing of foraminated sheet metal or woven wire, substantially as shown and described. (3) In a gas stove, the combination, with the foraminated or woven-wire casing and a subjacent burner, of a cone-shaped or converging shell having its larger end at the bottom and sustained upon the outer casing at or near its middle, substantially as shown and described."

The following diagram will serve to illustrate the stove of both patents.

IMPERFORATE CAP.

ILLUMINATED SHELL.

PERFORATED DRUM.

CAST-IRON BASE.

The defenses to both patents are lack of patentability and noninfringement.

H. A. West, for complainant.
J. E. M. Bowen, for defendants.

COXE, District Judge (after stating the facts). The fundamental principle upon which the Carrington stove operates is the free radiation of heat at all points and particularly at the lower portion of the stove. To produce this result the casing is perforated from top to bottom with small holes close together and is closed at the top with an imperforate cap. In high stoves a deflecting plate is suspended centrally in the drum to intercept the heat and throw it out at the base of the stove. What the patentee wished to gain was free lateral radiation at all points—at the bottom as well as the top of the stove. What he wished to avoid was upward drafts and chimney-like effects above the burner. In this distinction lies whatever merit there is in the Carrington stove. Its novelty consists in departing from the old method of utilizing upward drafts by the substitution of mechanism, the principal object of which is to destroy such drafts and substitute horizontal radiation therefor. This proposition is very clearly stated in complainant's brief as follows:

"The rapid circulation of air is localized at the bottom of the room by numberless forced jets, like so many horizontal chimneys, each jet having

a lateral impetus causing mainly a horizontal circulation of air instead of a vertical circulation as in other gas stoves; that is to say, instead of a chimney-like vertical column of air ascending to the ceiling as with common stoves, a horizontal projection of currents is produced by the Carrington stove."

In view of the conclusion reached upon the question of infringement it is unnecessary to discuss the prior art further than to say that at the date of Carrington's application gas stoves were old. They had been known for years, and, in appearance, were similar to the stove of the patent. Perforated bottom plates and drums and burners located near the bottom plates were well known. So were drums filled with small perforations, in similar structures. A broad construction of the claims is, therefore, inadmissible. The similarity in appearance between the defendant's stove and the Carrington stove is so marked that there is danger of being misled upon the question of infringement. An examination of the two structures will, however, demonstrate the fact that they operate upon radically different principles. Indeed, the defendant has taken pains to retain the very features which Carrington denounced as defects and endeavored to eliminate by every means in his power. The defendant's stove is constructed with an interior glass cylinder, just inside the sheet-metal casing, extending about three-fourths of the distance from the base to the cap. Below this glass cylinder the casing is perforated as in the Carrington stove, but above it the openings are comparatively very large, leaving an almost unobstructed passage for the heated air at the top of the stove, after first being superheated by a cast-iron radiator located at that point. The glass cylinder acts as a chimney to carry the heated air directly to the top of the stove and effectually prevents any passage of air through the small perforations. The perforations are there to add beauty to the stove and protect the glass; not to perform any heating function. The stove would operate in precisely the same way if the lower casing were removed and the upper casing with the large perforations made to rest directly on the glass chimney. So, too, the operation would be the same if the chimney were omitted altogether and the drum made without perforations, except the large ones at the top. This is clearly proved by the defendant, and, subsequently, admitted by the principal witness for the complainant who says: "The inside glass chimney is carried up to such a height that it partially destroys the desired result, that of having the cold currents of air passing over the flame." In short, Carrington's purpose was to get heat from the bottom of the stove, that of the defendant to get heat from the top only. The defendant may have copied Carrington's design but not his mechanical arrangement—not his principle of heating.

It is argued that the glass chimneys become broken and that, if used without the chimney, the defendant's stove will infringe. The answer is that the evidence is uncontradicted that the defendant never sold a stove without a chimney and that it has replaced a great many broken chimneys. There is no evidence that defendant's stove was ever used without a chimney, certainly none that defendant was privy to such use. As the defendant's drum, for all purposes except ornamentation, is without the small perforations,

the glass chimney operating to close them for all mechanical functions, it must be held that the defendant does not infringe the claims of No. 419,827.

It is also clear that the claims of No. 420,225 are not infringed. The defendant does not use an illuminated shell above the burner. The glass chimney is not an equivalent for this shell, for it is not conical or dome-shaped, it is not adjustable, and it is not supported or suspended above the burner in the sense of the patent. Its mechanical function is the direct opposite of that attributed to the patented shell. Neither can it be said that the cast-iron radiators at the top of the defendant's stove are equivalents because they sometimes become red hot. The object of the Carrington shell is to prevent this maximum of heat at the top of the stove. In material, position, shape and function the radiators are totally different from the shell of the patent. It follows that the bill must be dismissed.